IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**DONTA JERMAINE WEST**                                                            **PLAINTIFF**

**v.**                                                   **No. 1:25CV11-DAS**

**SHERIFF EDDIE HAWKINS, ET AL.**                              **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Donta Jermaine West, who challenges the conditions of his confinement under 42 U.S.C. § 1983 – which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit.[1]

The gravamen of the plaintiff's case is the allegation that the defendants fabricated criminal charges against him, then detained him without a preliminary hearing. After reviewing the plaintiff's complaint, the court issued an order directing the plaintiff to show cause why the instant case should not be dismissed. The plaintiff filed four responses to the order; however, only the first response was timely. For the reasons set forth below, the court finds that the plaintiff has shown cause as to his Fourteenth Amendment claims against Sheriff Eddie Hawkins (in his official capacity) of indefinite pretrial detention without a preliminary hearings on three charges: (1) July 23, 2023, possession of narcotics; (2) November 21, 2024, possession of a controlled substance; and (3) November 29, 2024,

---

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan,* 595 F.3d 610 (5th Cir. 2010) (PLRA applies when inmate is incarcerated at the time he files suit, even if he was released during pendency of suit).

possession of a controlled substance with intent to distribute.[2] The remaining claims and defendants will be dismissed with prejudice for failure to state a claim upon which relief could be granted

**West's 2023 Charges**

The plaintiff alleges that on June 7, 2023, he was arrested for possession of methamphetamine with intent to distribute and taken to the Lowndes County Jail.[3] He had a broken hand at the time of his arrest. He was taken to an orthopedic clinic on July 12, 2023, where the doctors prescribed him pain medication for his broken hand.[4] On July 23, 2023, jail staff, including defendant Sgt. Jeff Edmonson (a narcotics agent) conducted a shakedown of his unit, discovered West's prescription drugs, and ultimately charged him with possession of narcotics. On July 27, 2023, the Justice Court held an *initial appearance* on the July 23 possession of narcotics charge, found probable cause, and bound the case over to the Grand Jury.[5] On January 27, 2024, the Grand Jury returned an Indictment against West on the possession of methamphetamine charge from June 7, 2023. The current status of the July 23, 2023, narcotics charge is not included in West's allegations.

**West's 2024 Charges**

Deputy Sheriff Andrew Gill arrested West over a year later on November 21, 2024, for possession of a controlled substance, and Deputy Sheriff Kadan Adam arrested him a third time on

---

[2] It is unclear what the controlled substances were as to his November 2024 charges.

[3] West does not mention in his complaint or supplements whether he had an initial appearance or preliminary hearing as to this charge; thus, he has not set forth a claim that he was denied these appearances.

[4] West eventually underwent surgery on his hand on August 15, 2024.

[5] West states that the July 27, 2023, proceeding was an initial appearance. However, it is unclear what type of proceeding West attended, as the finding of probable cause that the defendant committed the crime – and the binding of a defendant over to the Grand Jury – normally occur during a preliminary hearing, not an initial appearance.

November 29, 2024, for possession of a controlled substance with intent to distribute. West alleges that neither Gill nor Adam had probable cause to arrest him on the November 2024 charges – and that they questioned him without giving him *Miranda* warnings. On November 22, 2024, West attended an initial appearance as to the November 21 charge and was released on a $5,000 bond. On December 2, 2024, he attended the initial appearance on his November 29 charge; the Court found probable cause to arrest him and ordered that he be held without bond.[6] West believes the Gill and Adam arrested him in retaliation for filing grievances against Sheriff Eddie Hawkins regarding the July 23, 2023, charge for possession of narcotics. The criminal proceedings arising out of the November 2024 charges are ongoing.

**The Present Proceedings**

On January 23, 2025, West filed the instant action, presenting several claims for relief arising out of the facts set forth above. First, he argues that he was improperly arrested on July 23, 2023, because he was charged with illegal possession of narcotics – which had allegedly been legally prescribed to him. Second, he makes the bare allegation that the January 27, 2024, Indictment is "fake." West also claims that all defendants committed "perjury," though he has not identified any proceeding during which any defendant knowingly gave false sworn testimony. He argues that Justice Court Judge Christopher Hemphill committed "perjury" by writing "defendant refused bond" on the signature line on West's December 2, 2024, Initial Appearance form. However, it appears that the error in the form was corrected, as the erroneous entry was lined through, with the notation "scrivener's error," and West, himself, signed the document in the proper space.

---

[6] West claims that he should have been released on bond as to the November 29 charge; however, his arrest constituted a violation of the terms of his November 22 bond. Revocation of bond and placement in pretrial detention for violation of its conditions are proper and commonplace.

West also claims that defendants Gill and Kadan separately had arrested and questioned him on the two different charges in November 2024 because he had posted YouTube videos about the actions of Sheriff Hawkins involving his July 23, 2023, charge for possession of narcotics. West has offered only his personal belief that the arrests and interrogations arose out of his posting of the videos.

One overarching claim is that, by accepting the allegedly "fake" Indictment, everyone involved in his prosecution has joined a conspiracy to ensure that West is wrongfully convicted, including: Assistant District Attorney Ben Lang, Foreman of the Grand Jury, the Grand Jurors, Circuit Clerk Teresa Barksdale, Justice Court Clerk Jennifer S. Williams, Justice Court Judge Hemphill, the Circuit Judge, District Attorney Scott Colom, Investigator Max Branch, and "local government officials" (basically, anyone whose name appears on the documents in his state criminal case). In sum, West believes that his prosecution "is an organize[d] crime within the Judicial Municipal Criminal Legal System" and that "[a]ll local government officials are covering for one another." Doc. 14 at 2. Though he mentions various people participating in the alleged "conspiracy," he has named only five defendants: (1) Lowndes County Sheriff Eddie Hawkins; (2) Sgt. Jeff Edmonson (Narcotics Agent); (3) Deputy Andrew Gill; (4) Deputy Kadan Adams; and (5) Justice Court Judge Christopher Hemphill.

**The Show Cause Order**

On April 30, 2025, the court issued an order [28] for the plaintiff to show cause, within 21 days, why the instant case should not be dismissed. The plaintiff filed four responses to the show cause order – on May 19, 2025, June 2, 2025, June 3, 2025, and June 24, 2025. The May 19 response was timely filed before the May 21, 2025, deadline. The plaintiff signed the remaining three

responses on May 25, May 29, and June 18 – all after the May 21 deadline.[7] For this reason, the court will not discuss the remaining three responses in detail for the purposes of this memorandum opinion, though the court will briefly address why they do not support West's § 1983 claims. In the interest of clarity and continuity, the court has drawn much of the discussion below from the show cause order.

### Claims Arising Out "Bogus" Charges Regarding the Plaintiff's Alleged Prescription Drugs and the Allegedly "Fake" Indictment

West claims that, as a result of a shakedown of his jail cell, he was improperly charged in July of 2023 for possessing narcotics which a doctor had prescribed to him. He argues that, because he had a prescription, he legally possessed the drugs – and the criminal charges are thus "bogus."[8] In addition, his claims of "perjury" against various people involved in his criminal prosecution are based on their reliance upon the allegedly "bogus" January 27, 2025, Indictment arising out of West's drug possession charge of June 7, 2023. West also accuses Judge Hemphill of "perjury" based upon errors (later corrected) on West's Initial Appearance form. In other words, West believes that the defendants have fabricated the charges against him – which implicates a claim of malicious prosecution.

The criminal proceedings arising out of these charges are, however, ongoing; as such, none of the plaintiff's claims is ripe for decision:

> The principles and reasoning of *Heck* thus point toward a corollary result here: There is not "a complete and present cause of action," *Wallace*, 549 U.S. at 388, 127 S.Ct.

---

[7] Under the "prison mailbox rule," a prisoner's federal pleading is deemed filed when he delivers to prison officials for mailing to the district court. *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998) (relying on *Houston v. Lack* and its progeny). West's last three responses to the Show Cause Order were untimely, even with the benefit of the mailbox rule.

[8] In the court's experience over many years, narcotics are contraband in all jails and prisons in the state. When a prescription for narcotics for an inmate is absolutely essential, the facility nurse administers the narcotics – and waits to make sure that the inmate actually takes the medicine (to prevent the inmate from hoarding the drug to act as a form of jail currency – and to ensure that he and others do not suffer harm from overdose).

> 1091, to bring a *fabricated-evidence challenge to criminal proceedings* while those criminal proceedings are ongoing. Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*, see 512 U.S. at 486–487, 114 S.Ct. 2364, will the statute of limitations begin to run.
>
> …
>
> The proper approach in our federal system generally is for a criminal defendant who believes that the criminal proceedings against him rest on knowingly fabricated evidence to defend himself at trial and, if necessary, then to attack any resulting conviction through collateral review proceedings. [The plaintiff] therefore had a complete and present [§ 1983] cause of action for the loss of his liberty *only once the criminal proceedings against him terminated in his favor.*

*McDonough v. Smith*, 588 U.S. 109, 119–121 (2019) (emphasis added).

*The Heck prohibition applies with equal force when, as here, the plaintiff is facing pending criminal charges* if "a judgment in [his] favor … would necessarily imply the invalidity of a *subsequent* conviction or sentence [as to those pending charges]." *Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir.1996) (emphasis added). Claims barred by *Heck* are legally frivolous. *Id.* at 102.

In this case, a judgment in the plaintiff's favor on his § 1983 claims arising out of allegations of false arrest, false imprisonment, or malicious prosecution would necessarily imply the invalidity of any *subsequent* state conviction on the underlying criminal charges. As such, *Heck* bars these claims until the plaintiff obtains a favorable disposition on the pending criminal charges. *See Wells v. Bonner,* 45 F.3d 90, 95 (5th Cir.1995) (malicious prosecution and false arrest claims barred by *Heck*); *Thompson v. City of Galveston,* 979 F.Supp. 504, 507 (S.D.Tex.1997) (malicious prosecution, false arrest, and false imprisonment claims barred by *Heck*), *aff'd,* 158 F.3d 583 (5th Cir.1998); *see also Vicknair v. St. John the Baptist Parish,* Civil Action No. 97-3690, 1998 WL 104669, at *4 (E.D.La. Mar. 5, 1998) (Wilkinson, M.J.) (adopted by Clement, J., on Apr. 9, 1998) (same).

In this case, none of the criminal proceedings from which West's allegations arise has concluded; as such, his claims in the present case are not ripe for decision and should be dismissed

without prejudice for that reason (with the exception to those arising out of the failure to conduct a preliminary hearing as to charges stemming from the events of July 27, 2023, November 21, 2024, and November 29, 2024).

### Judicial Immunity Cloaks Judge Hemphill

As a judicial officer, defendant Justice Court Judge Christopher Hemphill is cloaked with absolute judicial immunity, and he must be dismissed from this case for that reason. Under the doctrine of judicial immunity, judicial officers are absolutely immune from civil liability for acts performed in the exercise of their judicial function. *Mireles w. Waco*, 502 U.S. 9, 10 (1991). Indeed, "[j]udicial immunity is an *immunity from suit* and not just from the ultimate assessment of damages." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (emphasis added). Judicial immunity may be pierced in two circumstances: (1) "a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity"; and (2) "a judge is not immune from actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Bowling v. Roach*, No. 19-41003, 2020 WL 2838622, at *3 (5th Cir. May 29, 2020), *quoting Mireles v. Waco*, 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Four factors determine whether a judicial officer's actions are judicial in nature: (1) whether the acts are a normal judicial function; (2) whether the acts occurred in a courtroom or other judicial space; (3) whether the complained-of acts relate to a case pending before the judicial officer; and (4) whether the acts relate directly to an appearance before the judicial officer in his official capacity. *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993).

Section 1983 also provides absolute judicial immunity to judicial officers against claims for injunctive relief:

> [I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Judges similarly enjoy absolute immunity from civil claims for damages in *Bivens* actions. *Villegas v. Galloway*, 458 F. App'x 334, 337 (5th Cir. 2012). Absolute judicial immunity even extends to *Bivens* claims for injunctive relief:

> More recently, courts have extended this absolute judicial immunity to *Bivens* suits for injunctive relief. *See, e.g., Bolin v. Story,* 225 F.3d 1234, 1242–43 (11th Cir. 2000); *Mullis v. U.S. Bankr.Ct. for Dist. of Nev.,* 828 F.2d 1385, 1391–94 (9th Cir.1987); *Emerson v. United States,* No. 12–884, 2012 WL 1802514, at *3 (E.D.La. Apr. 30, 2012); *Boyd v. Vance,* No. 09–7643, 2010 WL 235031, at *2 (E.D.La. Jan. 13, 2010); *Wightman v.. Jones,* 809 F.Supp. 474, 479 (N.D.Tex. Dec. 7, 1992). In so doing, these courts have cited policy considerations as well as congressional amendments to Section 1983 law extending immunity against such claims to suits for injunctive relief in most circumstances. *See, e.g., Wightman,* 809 F.Supp. at 476–79.

*Thibodeaux v. Africk*, No. CIV.A. 14-921, 2014 WL 3796078, at *3 (E.D. La. July 30, 2014).

Our sister court in the Southern District has come to the same conclusion, holding, "judicial Defendants are absolutely immune from suit for monetary damages as well as equitable relief." *Edmonson v. Lee*, No. 3:08CV149-LTS, 2008 WL 2080912, at *3 (S.D. Miss. May 9, 2008). This court also recognizes absolute judicial immunity for all types of suits, whether grounded in law or equity.

In this case, all of Judge Hemphill's actions involved rulings in West's criminal case – which clear clearly fall under the rubric of "judicial in nature." As such, defendant Judge Hemphill must be dismissed with prejudice from this case under the doctrine of absolute judicial immunity.

### No Supervisor Liability for Sheriff Hawkins (in His Individual Capacity)

Defendant Sheriff Hawkins (in his individual capacity) should be dismissed with prejudice from this case, as the plaintiff's allegations against him arise either out of his role as a supervisor – or his participation in the grievance process – which precludes a plaintiff from obtaining relief under 42 U.S.C. § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in

the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). A § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007).

There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, and (2) when he implements an unconstitutional policy that results in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for failure to supervise his subordinates – even when he is present on the scene – because, after *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

In this case, the plaintiff does not allege that Sheriff Eddie Hawkins had any personal involvement or was in any way causally connected to the plaintiff's claims. As such, Sheriff Hawkins (in his individual capacity) should be dismissed with prejudice from this case for failure to state a constitutional question against him.

### No Facts Alleged to Support Retaliation Claim Against Defendants Gill and Adam

Neither has the plaintiff has alleged facts sufficient to support his claim for retaliation. Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). On the other hand, courts must view such claims with skepticism to keep from getting bogged down in every adverse act against a prisoner. *Id*. The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory

adverse act, and causation, *i.e.*, "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (citations omitted ), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996).

A prisoner seeking to establish a retaliation claim must also show that the prison official's conduct was sufficiently adverse so that it would be capable of deterring a person of ordinary firmness from exercising his constitutional rights in the future. *Winding v. Grimes*, 4:08CV99-FKB, 2010 WL 706515 at 3 (S.D. Miss. Feb. 22, 2010); *citing Morris v. Powell*, 449 F.3d 682, 684–85 (5th Cir. 2006) at 685. A single incident involving a minor sanction is insufficient to prove retaliation. *Davis v. Kelly*, 2:10CV271-KS-MTP (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999), 2:10CV271-KS-MTP, 2012 WL 3544865 *Id.*). Similarly, inconsequential (*de minimis*) acts by prison officials do not give rise to an actionable retaliation claim. *See Morris* at 685.

In this case, West must show that he engaged in constitutionally protected activity (seeking redress for grievances regarding his arrest for possession of prescription drugs), faced significant adverse consequences (his arrests and interrogations over a year later), and that such actions were taken "in an effort to chill [his] access to the courts or to punish [him]for having brought suit." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir.), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5th Cir. 1987). The showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).

The Fifth Circuit has made clear the dangers of permitting retaliation claims to proceed in the absence of factual allegations to support an inference of a retaliatory motive. In *Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988), the plaintiff, Daniel Johnson, had filed numerous lawsuits

against administrators and staff within the Texas prison system. The defendants then denied Johnson's request to have his custody status upgraded, and Johnson alleged that the denial was in retaliation for filing his previous suits. *Id.* The Fifth Circuit rejected Johnson's claim – and explained why courts must insist upon specific factual allegations to support an inference of retaliation:

> If we were to hold that [Johnson] by his allegations in this case had established a case which was entitled to the full panoply of discovery, appointment of counsel, jury trial and the like, we would be establishing a proposition that would play havoc with every penal system in the country. Prison administrators must classify and move prisoners. It is a virtual truism that any prisoner who is the subject of an administrative decision that he does not like feels that he is being discriminated against for one reason or another, such as the past filing of a grievance, a complaint about food or a cellmate, or a prior complaint that he was not being treated equally with other prisoners. If we were to uphold the further pursuit of [Johnson's] complaint in this case we would be opening the door to every disgruntled prisoner denied the next level of trustyship, reassigned to another prison job, moved to another cell, [or] claiming his shoes were uncomfortable, to bring such a suit.

*Id*.

Prisoners routinely file grievances against prison staff on an ongoing basis, for any number of reasons. As such, it is not uncommon for a prisoner to file a grievance, then face negative treatment sometime thereafter. Thus, to avoid turning nearly every adverse action against a prisoner or parolee into a claim of retaliation, courts insist upon additional allegations or evidence to substantiate a retaliation claim, such as prison staff issuing threats of disciplinary action if an inmate files further grievances, officers pulling an inmate aside to threaten him, perpetrating unprovoked acts of violence against him, or wholly fabricating charges of prison rule violations against an inmate. *See Decker v. McDonald*, 2010 WL 1424322 (E.D. Tex. 2010) (Magistrate Judge's Report and Recommendation) (unpublished), adopted by the District Court, 2010 WL 1424292 (E.D. Tex.) (unpublished).

The plaintiff alleges that on November 21, 2024, defendant Gill "conducted an illegal warrantless search and seizure without probable cause" and an "illegal custodial interrogation" during his arrest for possession of methamphetamine. Doc. 8, p. 5. Similarly, West alleges that on November

29, 2024, defendant Adam "conducted an illegal warrantless search and seizure without probable cause" and "ask[ed] [West] question[s] at the time of his arrest" before the arresting officer gave *Miranda* warnings. *Id*. He alleges that Gill and Adam carried out these searches, seizures, and arrests in retaliation for his filing of grievances and complaints against Sheriff Hawkins arising out of events occurring on July 27, 2023, more than a year prior.

As set forth above, on November 22, 2024, West attended an initial appearance as to the November 21 charges; the state court found probable cause to arrest him and set a $5,000 bond. In addition, on December 2, 2024, the state court conducted an initial appearance on the November 29, 2024, charges and ordered that West be held without bond. Under Miss. R. Cr. P. 5.2(a)(3), a probable cause ruling regarding arrest will have been made by the end of the initial appearance. Under that rule, if the suspect's arrest was *not* pursuant to a warrant, then, during the initial appearance, the Justice Court Judge must "determine whether there was probable cause for the arrest and note the probable cause determination for the record." Miss. R. Cr. P. 5.2(a)(3). Otherwise, "[i]f there was no probable cause for the warrantless arrest, the defendant shall be released." *Id*. Thus, in Mississippi, by the conclusion of an initial appearance, probable cause for arrest will have been established either by the prior issuance of an arrest warrant – or during the hearing, itself. *Id*. As the Justice Court Judge ordered that West be held without bond (not released), the Judge found probable cause to support West's arrest for the crime charged.[9]

The defendants did not arrest West close in time to his complaints and YouTube videos. Given

---

[9] West's arrest for the November 29 charge also constituted a violation of the conditions of bond set at the November 22 initial appearance – which, by itself, gave the court cause to revoke bail and detain West at least until his preliminary hearing. It is not clear whether West was detained pursuant to a probable cause finding, revocation of the $5,000 bond, or both.

the span of time between West's complaints about the July 2023 charges and the alleged November 2024 retaliatory acts (well over a year), he does not allege "a chronology of events from which retaliation may plausibly be inferred." *Haddix v. Kerss*, 203 F. App'x 551, 554 (5th Cir. 2006) (per curiam) *(*quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)). Indeed, even if the arrests and searches had occurred soon after the grievance, temporal proximity, alone, is insufficient to establish causation. *See, e.g., Strong v. University Healthcare System, L.L.C.*, 482 F.3d 802, 807, 808 (5th Cir. 2007) (temporal proximity alone was not enough to show causation to prevail on employment-based First Amendment retaliation claim); *see also Robinson v. Director, TDCJ-CID*, Civil Action NO. 6:16cv202, 2016 WL 4577824, at *3 (E.D. Tex. Sept. 2, 2016) (rejecting prisoner's retaliation claim and noting that the mere sequence of events of a prisoner filing a grievance, then receiving discipline, was insufficient to establish causation) (citing *Strong*, 482 F.3d at 808); *Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009) (noting that "*the post hoc ergo propter hoc* fallacy assumes causality from temporal sequence," which is a "false inference"); *Tampa Times Co. v. National Labor Relations Board*, 193 F.2d 582, 583 (5th Cir. 1952) (same). Given the span of time between West's complaints and his arrests, he has offered only his belief that he is a victim of retaliation and has thus not stated a valid § 1983 claim.[10, 11]

In addition, contrary to West's claim, the Justice Court *did* find probable cause to support his arrest and detention (with a $5,000 bond on the November 21 charge – and without bond on the

---

[10] The plaintiff has pursued a claim of retaliation against defendant Deputies Gill and Adam. To the extent he may seek such a claim against any of the remaining defendants, his allegations fail to state a valid claim for the same reasons.

[11] West has not alleged any facts to support this claim, such as: (1) the circumstances surrounding his arrest, (2) the state of the criminal proceedings, or (3) the evidence supporting the arrest. Such conclusory allegations cannot support a § 1983 claim.

November 29 charge). These findings of probable cause defeat his claim of malicious prosecution. Indeed, "[i]t is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest [or malicious prosecution], insulating the initiating party."[12] *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (en banc). In addition, "[Fifth Circuit] precedents have applied this rule even if the independent intermediary's action occurred after the arrest, and even if the arrestee was never convicted of any crime." *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016).

West has not alleged facts to show that the arresting officers' "malicious motive" led them to "withhold relevant information or otherwise misdirect the independent intermediary by omission or commission." *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017). Indeed, West makes only the bare allegation that the arrests were without probable cause. As such, "[b]ecause [West] failed to present well-pleaded allegations of taint, and because a [Justice Court] found probable cause [to arrest and detain him]," his allegations simply do not support this claim. *See Curtis v. Sowell*, 761 F. App'x 302, 305 (5th Cir. 2019).[13]

### Defendants to Be Dismissed

Defendant Sheriff Hawkins (in his individual capacity) should be dismissed with prejudice from this case, as the plaintiff's claims against him arise solely out of his position as a supervisor – or

---

[12] Both false arrest and malicious prosecution claims can be defeated if the defendant can show that probable cause for the arrest or prosecution exists. *See Danna v. Purgerson*, 760 F. App'x 275, 280 (5th Cir. 2019).

[13] In addition, West's November 29, 2024, arrest was a violation of the terms of his November 22, 2024, bond – a fact supporting his pretrial detention without bond on the November 29 charge.

through his participation in the grievance process. In addition, Judge Hemphill should be dismissed with prejudice from this case under the doctrine of judicial immunity. Further, defendant Officers Gill and Adam should be dismissed with prejudice from this case, as the plaintiff's allegations against them regarding retaliation fail to state a valid § 1983 claim. Finally, Narcotics Officer Jeff Edmonson (who recovered the narcotics from West's cell) should be dismissed without prejudice; West's criminal case regarding those narcotics is pending, and the § 1983 claim arising out of these facts will not be ripe until the conclusion of the criminal case, a direct appeal, and any claims of post-conviction collateral relief. However, defendant Lowndes County Sheriff Eddie Hawkins (in his official capacity) will remain in the case.[14]

**West's Timely Response**

In his May 12, 2025, response [29], West largely reiterates the allegations from his complaint. He notes that he had an initial appearance on November 22, 2024, as to his November 21, 2024, arrest, and he was released on a $5,000 bond. Doc. 29, p. 1. After his November 29, 2024, arrest, he had another initial appearance on December 2, 2024 – where the court denied his request for bond and ordered his pretrial detention. *Id.* According to West, he has not had a preliminary hearing as to either of these charges, and he argues various points of state law to highlight this deficiency. *Id.* He also erroneously tries to apply the Federal Rules of Criminal Procedure to his state criminal proceedings. *Id.* He seeks dismissal of the charges against him – and release from custody – based upon the alleged delays in his state criminal proceedings. *Id.* He also seeks punitive damages. *Id.* at 2. In addition, he seeks to press criminal charges against the defendants for perjury, forgery, and concealment of

---

[14] Suit against a Sheriff (in his official capacity) is merely suit against the County employing him. *See Brooks v. George Cnty., Miss.*, 84 F.3d 157, 165 (5th Cir. 1996). As such, the court will add Lowndes County, Mississippi, as a defendant in this case.

evidence. *Id*. He argues that the "statute of limitations" has expired as to the June 7, 2023, charge – based on alleged missed deadlines in his criminal case. *Id*. He also claims that his pretrial detention is illegal. *Id*. He claims that he has unconstitutionally been denied bail, counsel, and a hearing before a judge. *Id*. He believes that the defendants have violated his rights regarding the November 2024 charges in retaliation for his filing complaints against the Sheriff in early 2023. *Id*.

First, West's allegations regarding, dismissal of criminal charges, release from custody, expiration of the "statute of limitations," perjury, forgery, concealment of evidence, and denial of counsel involve the validity of his conviction or sentence; as such, they are matters to be resolve through *habeas corpus* and are improper in a case proceeding under 42 U.S.C. § 1983. *See Wilkinson v. Dotson*, 544 U.S. 74, 78, 125 S. Ct. 1242, 1245, 161 L. Ed. 2d 253 (2005). His denial of bail claim must be resolved through *habeas corpus*, rather than a suit under 42 U.S.C. § 1983.

His allegations regarding malicious prosecution (fabricated charges) must be dismissed because his criminal proceedings are ongoing, and a malicious prosecution claim becomes ripe only when the proceedings terminate in the plaintiff's favor. *See McDonough v. Smith*, 588 U.S. at 119–121. Further, West's allegations regarding violations of state law are not cognizable in a § 1983 action, which is limited to violations of federal law. As the Supreme Court held in *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), "[t]he first inquiry in any § 1983 suit, ..., is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws [of the United States]'" – not state law. In addition, as the Federal Rules of Criminal Procedure do not apply to State proceedings, West's claim that the state court did not apply those rules is without substantive merit. *See Cameron v. Hauck*, 383 F.2d 966, 971 n.7 (5th Cir. 1967) (addressing state *habeas corpus* petitioner's reliance on the Federal Rules of Criminal Procedure, holding, "The Federal Rules do not apply to state cases.")

For these reasons, the issues West raises in his timely response to the court's show cause order are without merit – except for his claim against the Sheriff (in his official capacity) for detaining him without a preliminary hearing, as discussed below.

**West's Untimely Responses**

The three remaining responses to the show cause order are both untimely and unresponsive to the court's order. In his untimely responses, West alleges various violations of criminal procedure, such as: **(1)** improperly obtained indictment (Doc. 30, p. 4); **(2)** ineffective assistance of counsel (Doc. 30, p. 1); **(3)** no probable cause for his arrest and detention; **(4)** speedy trial violation (Doc. 30, p. 3); **(5)** procedural defects during initial appearance (Doc. 31, p. 2); **(6)** expiration of the limitations period (Doc. 31, p. 2); **(7)** untimely indictment (Doc. 31, p. 3); **(8)** prosecutorial misconduct (pursuit of false charges) (Doc. 31, p. 3); **(9)** misapplication of the exclusionary rule (Doc. 31, p. 1); **(10)** failure to give *Miranda* warnings during arrest (Doc. 32, p. 2); **(11)** illegal search and seizure during arrest (Doc. 32, p. 2); **(12)** entrapment (Doc. 32, p. 4); and **(13)** failure to hold a preliminary hearing (Doc. 30, p. 2).

With the exception of his claim regarding failure to hold a preliminary hearing (Doc. 30, p. 2), West's untimely responses are without substantive merit for at least two reasons. First, each of the claims is a challenge to his criminal prosecution and is, thus, not cognizable as a claim under 42 U.S.C. § 1983. *See Wilkinson v. Dotson*, 544 U.S. 74, 78, 125 S. Ct. 1242, 1245, 161 L. Ed. 2d 253 (2005). Instead, such challenges must be brought through a petition for writ of *habeas corpus* under 28 U.S.C. § 2241 (the proper vehicle for challenging criminal matters prior to a judgment of conviction). The Supreme Court has decided this issue:

> [A] prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." *Preiser v. Rodriguez,* 411 U.S. 475, 489, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); see also *Wolff v. McDonnell,* 418 U.S. 539, 554, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Heck v. Humphrey,* 512 U.S. 477, 481, 114 S.Ct. 2364,

129 L.Ed.2d 383 (1994); *Edwards v. Balisok,* 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). He must seek federal *habeas corpus* relief (or appropriate state relief) instead.

*See Wilkinson, supra.*

In addition, as discussed in the court's show cause order (and reiterated above), West's claims are not ripe; such challenges to the criminal process must be raised only after the criminal proceedings have concluded and are decided in his favor. Ultimately, under his current pleadings, West seeks to litigate his criminal charges in these civil proceedings. Based upon his allegations in the present case, he must seek redress for his claims in his criminal cases, as "[c]riminal proceedings and criminal judgments require criminal remedies—not civil ones." *Wilson v. Midland Cnty., Texas*, 116 F.4th 384, 404 (5th Cir. 2024). Further, such a claim is not ripe; it becomes "a complete and present cause of action [only] once [his] criminal proceedings … [have] terminated in his favor."[15] *See McDonough, supra*. As such, West may pursue these civil claims only after the conclusion of his criminal proceedings. Thus, with the exception of West's claim regarding failure to hold a preliminary hearing, the court rejects West's arguments in these three responses both because they are untimely and because the arguments are without substantive merit.

### West's Remaining Claim

West has stated a claim against Sheriff Hawkins (in his official capacity) for failure to ensure that West had a prompt preliminary hearing. As West has claimed that his criminal proceedings have halted, the court cannot simply wait until the proceedings have concluded. Taking the plaintiff's allegations as true, the multiple instances of holding him indefinitely by failing to ensure a prompt

---

[15] Though a retaliation claim may move forward without the proceedings terminating in the plaintiff's favor, West's claim fails for other reasons.

preliminary hearing implicate this procedure as a Lowndes County Sheriff's Department policy. *See Jauch v. Choctaw Cnty.*, 874 F.3d 425, 435 (5th Cir. 2017) ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law") (*quoting Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011)). The allegations state a Fourteenth Amendment claim for denial of due process (holding West in jail indefinitely with no way to challenge the validity of the charges against him). Indeed, "[w]here a plaintiff claims that a particular municipal action itself violates federal law, or directs an employee to do so," the causation determination "is straightforward." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). The Fifth Circuit held, after an extensive exposition of controlling Supreme Court precedent:

> [P]rolonged detention without the benefit of a court appearance violates the detainee's Fourteenth Amendment right to due process. The right at issue here was clearly established and its contours "sufficiently clear" that any reasonable official would understand that the Constitution forbids confining criminal defendants for a prolonged period (months in this case) prior to bringing them before a judge.

*Jauch v. Choctaw Cnty.*, 874 F.3d 425, 436 (5th Cir. 2017). For these reasons, West has stated a claim against Sheriff Hawkins (in his official capacity) for confining him for a prolonged period of time prior to bringing him before a judge.[16]

## Conclusion

For the reasons set forth above, with the exception of West's claims of denial of due process

---

[16] The court notes that West's pleadings are a meandering jumble of repetitive facts that do not follow a chronological order. Further, there are gaps and inconsistencies leading to difficulty in discerning a complete timeline of events. Also, West may well be conflating at least one initial appearance with a preliminary hearing (which bears directly on the proper analysis). A full chronology will go a long way towards completing the picture of this case.

by indefinite detention against Sheriff Eddie Hawkins (in his official capacity) the plaintiff's claims will be dismissed for failure to state a claim upon which relief could be granted. His claims regarding "bogus" narcotics charges and a "fake" indictment will be dismissed without prejudice because they are not ripe for decision. Justice Court Judge Christopher Hemphill will be dismissed with prejudice as he enjoys absolute judicial immunity. Sheriff Eddie Hawkins (in his individual capacity) will be dismissed with prejudice for failure to state a claim, as the plaintiff's claims against him arise out of his role as a supervisor. Defendants Gill and Adam will be dismissed with prejudice, as the plaintiff has not alleged facts to support his claim of retaliation against them, and, at his initial appearance, the Justice Court found probable cause to arrest and detain him.

In sum, all of the plaintiff's claims (except his Fourteenth Amendment claim for holding him in pretrial detention without a preliminary hearing) will be dismissed with prejudice. In addition, all defendants, except Sheriff Eddie Hawkins (in his official capacity) will be dismissed with prejudice from this case. Finally, the court will add Lowndes County, Mississippi, as a defendant in this case. A judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 28th day of July, 2025.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE